UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

WALTER F. RYLANT, III,                                   Case No. 17-12354-t7

    Debtor.

WLC ENTERPRISES, INC.,

    Plaintiff,

v.                                                       Adv. No. 17-01090-t

WALTER F. RYLANT, III,

    Defendant.

## OPINION

Before the Court is plaintiff's complaint that its $30,000 claim against defendant is nondischargeable. After a trial on the merits, and for the reasons set forth below, the Court determines that the debt is nondischargeable.

I.     FACTS

The Court finds the following facts:

William Crawley is the President and owner of Plaintiff, a New Mexico corporation. Mr. Crawley has known Defendant for many years; the acquaintance started when Defendant helped get Mr. Crawley his first loan.

Defendant's background is in banking. He worked as a banker in California from about 1981 through 1999. Defendant's banking career ended when he plead guilty to 24 counts of grand theft of personal property (in the nature of fraud and embezzlement) and served several years in prison. After his release, Defendant moved back to New Mexico. Defendant started a "house

flipping" business in 2007 or 2008.

The Court finds that Mr. Crawley was a credible witness. The Court finds that Defendant was not a credible witness.

Plaintiff owned a restaurant in Albuquerque, New Mexico known as Murphy's Mule Barn. In late July or early August 2015, Defendant investigated whether to buy the restaurant from Plaintiff.

The parties had about 20 telephone calls and five or six meetings to discuss the sale of the restaurant. Several of the meetings were in the restaurant. Defendant personally conducted a walk-through of the restaurant and was aware of the general condition of the equipment.

On September 10, 2015, Plaintiff and Loop DL, LLC signed an asset purchase agreement for the restaurant assets. Loop is wholly owned by Defendant. The agreement was drafted by Defendant's attorney, Tim Padilla. Plaintiff did not have counsel.

The agreed-upon purchase price was $350,000, of which $50,000 was allocated to the restaurants' physical assets (tables, chairs, stoves, refrigerators, etc.). Loop agreed to pay $30,000 at closing, $20,000 15 days after closing, and sign a note for the remaining $300,000. The note was to accrue interest at 4%.

Before the agreement was signed, Plaintiff and Defendant discussed a possible all cash sale. At that time, Defendant had a Swiss bank account with at least $220,000 on deposit. The parties ultimately decided to proceed as outlined above.

The purchase agreement was signed on the same day as the closing, i.e., September 10, 2015. Loop signed the $300,000 note and delivered a cashier's check for $30,000. However, at closing Defendant borrowed $15,000 from Plaintiff, so the net cash Plaintiff received was $15,000.

The note does not contain standard terms that protect the holder in the event of a default.

For example, there is no "acceleration clause," no grace period, no late fee, and no default rate of interest.

Defendant and Loop took possession of the restaurant immediately. Despite the prior visits to the restaurant, Defendant claims he was shocked by the condition of the restaurant and its equipment. Allegedly because of the poor condition of the equipment, Loop did not make the $20,000 payment due on September 25, 2015. The first note payment of $3,656.78 was due November 1, 2015. Loop did not make that payment, nor any subsequent note payments.

Defendant borrowed an additional $15,000 from Plaintiff before December 11, 2015, allegedly for payroll. The net effect of the second personal loan is that Plaintiff received no money for the restaurant.

Although allegedly withholding payments because of the condition of the restaurant equipment, Defendant never gave Plaintiff notice of default under the purchase agreement.[1]

On January 29, 2016, Plaintiff sued Loop and Defendant in state court, case no. D-202-CV-2016-00656 ("State Court Action").[2] Loop filed a counterclaim for damages caused by the condition of the restaurant assets.

The action was tried on March 13 and 14, 2017, to Judge Valerie Huling. She found, inter alia:

- Defendant never repaid the $15,000 he personally borrowed from Plaintiff when he cashed the $30,000 cashier's check.
- Defendant did not repay the $15,000 payroll loan.
- The net result is that neither Loop nor Defendant made any payment of either interest or principal as required by the purchase agreement or promissory note.
- The failure to pay was a breach of the contract by Loop and Defendant, as

---

[1] The purchase agreement has a representation that the restaurant equipment is in good operating condition and repair. It also has a default provision requiring the non-defaulting party to give notice of default, which triggers a ten-day cure period.

[2] Neither party provided the Court with a copy of the state court complaint or counterclaim.

Defendant borrowed the money that was intended for payment and used it for other purposes. In addition, no payments have been made although Defendant and Loop continue to benefit from the use of the assets.
- Considering the Defendants are continuing to benefit from the use of the property, and have breached the contract, and intentionally refused to make payments as required under the APA and the promissory note, acceleration of the amounts due under the APA and promissory note is justified.
- Plaintiff's compensatory damages resulting from the breach of contract are $350,000 plus prejudgment interest of 4% per annum on the unpaid balance, beginning September 10, 2015.
- Loop is liable for all damages awarded to Plaintiff.
- In addition, Defendant is personally liable for $30,000 of the total damages awarded to Plaintiff, as a result of the loan from Plaintiff.
- Although the actions of Defendant resulting in breach of the contract were intentional, there is insufficient evidence that he did not believe he was justified in temporarily delaying payment due to the condition of the assets and the unexpected expenses.
- Plaintiff is not entitled to punitive damages, as the Plaintiff has failed to prove a culpable mental state on the part of Defendant or Loop.
- Plaintiff failed to prove the elements of tortious interference with contract, fraud, negligence, or violation of the Unfair Practices Act.
- The damages incurred by Loop for breach of contract due to equipment in need of repair totaled $2,805.73.

Judge Huling also concluded:

- If the Plaintiff was contesting the limited liability status of Loop DL, LLC, Plaintiff had the burden of proving that Loop DL, LLC was not a limited liability company, and Plaintiff failed to meet that burden.
- The loan of $15,000 from the $30,000 cashier's check and the additional $15,000 payroll loan were loaned to Defendant personally and in his capacity as manager of Loop, and were never repaid.
- The intentional failure to make any payments pursuant to the APA or the promissory note is a substantial and material breach of the contracts and has resulted in compensatory damages incurred by Plaintiff in the amount of $350,000, plus prejudgment interest of 4% on the amount outstanding, beginning September 10, 2015.
- As $30,000 was loaned to Defendant in his individual capacity and to Loop, both Defendants are jointly and severally liable to pay $30,00 of the total amount awarded.
- Although intent has been proven on the part of Defendant, the requisite culpable mental state has not been proven to support a punitive damages award against any party, and therefore, no punitive damages are awarded.

On June 2, 2017, Judge Huling entered a money judgment in favor of Plaintiff against Loop

for $347,194.27^3$ and a money judgment in favor of Plaintiff and against Defendant for $30,000.

Defendant/Loop operated the restaurant until the June 2, 2017, judgment was entered. Shortly thereafter, Defendant purported to perfect a security interest in the restaurant assets, and then "repossessed" the assets.

Post-judgment, Plaintiff went to the restaurant to see if there was any way to collect. While there, Plaintiff saw Defendant removing the restaurant equipment, furniture, and dishes. By the time Plaintiff gained access to the restaurant, little tangible property remained. Defendant/Loop later sold the assets and kept the proceeds.

On September 14, 2017, Defendant filed this chapter 7 case. Plaintiff brought this adversary proceeding on December 18, 2017.

Mr. Crawley was counting on the restaurant sale to finance his retirement. Because of Defendant's and Loops' failure to pay anything, Mr. Crawley, age 74, is forced to drive a truck to earn a living.

## II. DISCUSSION

A. § 523(a)(6).

Plaintiff argues that Defendant's $30,000 debt is nondischargeable under § 523(a)(6), which applies to debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." To satisfy the "willful" element of § 523(a)(6), there must be both "an intentional act and an intended harm; an intentional act that leads to harm is not sufficient." *In re Parra*, 483 B.R. 752, 771 (Bankr. D.N.M. 2012). The debtor "must 'desire ... [to cause] the consequences of his act ... or believe [that] the consequences are substantially certain to result from it'"; *See also In re Longley*, 235 B.R. 651, 656 (10th Cir. BAP 1999) (quoting *Dorr, Bentley &*

---

[3] $350,000 minus the $2,805.73 in repair damages.

*Pecha, CPA's, P.C. v. Pasek (In re Pasek)*, 983 F.2d 1524 (10th Cir. 1993)); *In re Parra*, 483 B.R. at 771 (quoting *Longley*).

For a debtor's actions to be malicious, they must be intentional, wrongful, and done without justification or excuse. *In re Deerman*, 482 B.R. 344, 369 (Bankr. D.N.M.) (citing *Bombardier Capital, Inc. v. Tinkler*, 311 B.R. 869, 880 (Bankr. D. Colo. 2004)).[4] *See also Saturn Systems, Inc. v. Militare (In re Militare)*, 2011 WL 4625024, *3 (Bankr. D. Colo.) (a "wrongful act, done intentionally, without just cause or excuse"); *Tso v. Nevarez (In re Nevarez)*, 415 B.R. 540, 544 (Bankr. D.N.M. 2009) (without justification or excuse); *America First Credit Union v. Gagle (In re Gagle)*, 230 B.R. 174, 181 (Bankr. D. Utah 1999) (without justification or excuse).

It is an open question whether intentional breaches of contract can come within § 523(a)(6). 4 Collier on Bankruptcy ¶ 523.12 [1] states "Section 523(a)(6) generally relates to torts and not to contracts." Some cases have held that no breach of contract claim, intentional or otherwise, can come within § 523(a)(6). *See, e.g., In re Best*, 109 Fed. Appx. 1, 4 (6th Cir. 2004) (contract claim insufficient to § 523(a)(6) purposes; some tortious conduct must be shown). Other cases have held that in certain circumstances intentional contract breach cases fall within § 523(a)(6). *In re Jercich*, 238 F.3d 1202, 1206 (9th Cir. 2001); *Wish Acquisition, LLC v. Salvino*, 2008 WL 182241, *3–4 (N.D. Ill.2008) (same). *See also In re Barton*, 465 F. Supp. 918, 924 (S.D.N.Y. 1979) (discussing the case law); *Texas v. Walker*, 142 F.3d 813, 823–24 (5th Cir. 1998) (claim for breach of contract and tort of conversion may arise from the same set of facts, and hence may be nondischargeable under § 523(a)(6)).

The discussion in *Rivera v. Moore McCormack Lines, Inc.*, 238 F. Supp. 233 (S.D.N.Y. 1965), is informative and often cited:

---

[4] *Tinkler* got the "wrongful act, done intentionally, without just cause or excuse" language from *Tinker v. Colwell*, 193 U.S. 473, 486 (1904).

> Clearly the form of the judgment itself does not control and resort may be had to the entire record to determine dischargeability. *Greenfield v. Tuccillo*, 129 F.2d 854 (2nd Cir. 1942). An act may be merely negligent to predicate civil liability, or it may be the result of wilfulness and malice. This is an issue to be resolved before dischargeability is determined, and the theory of recovery-tort or contract-is immaterial. *McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S. Ct. 38, 61 L. Ed. 205 (1916); *Greene v. Lane*, 87 F.2d 951, 109 A.L.R. 1188 (7th Cir.1937*); Barbery v. Cohen*, 183 App. Div. 424, 170 N.Y. Supp. 762 (1918).

*Rivera v. Moore McCormack Lines, Inc.*, 238 F. Supp. At 234 (construing the predecessor to § 523(a)(6).

In the Tenth Circuit, the door is open to declaring certain intentional breach debts nondischargeable under § 523(a)(6). *See, e.g., Sanders v. Vaughn (In re Sanders)*, 210 F.3d 390, at *2 (10th Cir. 2000) (unpublished) (nothing indicates the Supreme Court's intention to immunize debtors under § 523(a)(6) for willful and malicious breach of contact); *In re Militare*, 2011 WL 4625024, at *3 (Bankr. D. Colo. 2011) (a knowing breach of contract is not necessarily excluded from "willful and malicious" injury).

The Court holds that there is nothing in the language of the Bankruptcy Code, including § 523(a), preventing a breach of contract judgment from being declared nondischargeable under § 523(a)(6), so long as the requirements of that subsection are met.

Here, the Court finds that Defendant, acting through Loop, concocted a scheme to take Plaintiff's restaurant assets without paying for them. At the time of closing and thereafter, Defendant extended the scheme to the $30,000 he personally borrowed from Defendant. The Court finds that neither Loop nor Defendant ever intended to repay Plaintiff. Thus, the Court finds that Defendant willfully injured Plaintiff, knowing, as he must have, that his actions would result in $30,000 in damages.

The Court also finds that Defendant's actions were malicious, in that they were wrongful, intentional, and taken without justification or excuse. The Court finds and concludes that the

professed reason for withholding payment, i.e., the condition of the restaurant equipment, was known to Defendant before closing, and was a pretext. The Court finds that Defendant/Loop intended to close the purchase paying as little cash as possible, default on all payment obligations, and then either "re-trade the deal" or simply not pay at all.

The Court agrees with the case law that, in general, the failure to pay a debt does not come within § 523(a)(6). *See, e.g., Byrnes v. King*, 2010 WL 2733394, at *2 (Bankr. D.N.J. July 8, 2010) (party's failure to pay mortgage was insufficient to show party's intention of injury under § 523(a)(6)); *In re Abdallah*, 2012 WL 631845, at *1 (Bankr. M.D. Pa.) ("If the failure to pay a just debt were the only criteria that would qualify under this exception to discharge [§ 523(a)(6)], then no debt would ever be dischargeable. Congress clearly meant to limit this exception to acts done with the actual intent to cause injury."); *In re Gucciardo*, 577 B.R. 23, 38 (Bankr. E.D.N.Y. 2017) ("Absent evidence of intent to injure, and of malice, the failure to repay, even if combined with payment to other creditors, does not constitute a "willful and malicious act" under § 523(a)(6)"); *In re Salzillo*, 2013 WL 4525199, at *6 (Bankr. W.D. Tex.) ("The Defendant's failure to pay the Plaintiffs their money, while regrettable, is not proof in and of itself of willful and malicious injury."). It is and should be the rare breach of contract case that comes within § 523(a)(6).

The Court finds and concludes that this is one of the rare cases. Defendant's failure to repay was not the result of inability to pay, as is usually the case in bankruptcy. Rather, it was the culmination of a scheme to deprive Plaintiff of its cash and restaurant, preying on Defendant's eagerness to sell the restaurant and finance Mr. Crawley's retirement. All of the trial evidence: the long-standing friendship between Debtor and Mr. Crawley; Mr. Crawley's lack of sophistication and lack of representation; Mr. Crawley's eagerness to sell the restaurant; the one-sided terms of the purchase agreement and promissory note; borrowing of $15,000 on the closing date; borrowing

another $15,000; the complete failure to pay, or attempt to pay, any amounts due; the last-minute security agreement and repossession; the failure to use the Swiss bank account money to pay any part of the debt; and Defendant's general lack of credibility, all point to the fact that Defendant's failure to repay the $30,000 loan was a willful and malicious injury to Plaintiff and its property.

B.  Res Judicata.[5]

A final judgment from another court can have a preclusive effect in a subsequent bankruptcy case. *In re Crespin*, 551 B.R. 886, 895 (Bankr. D.N.M. 2016). Preclusion can occur in two forms: claim preclusion and issue preclusion.

   1.  Claim Preclusion. In the Tenth Circuit, a claim that arises out of the same "'transaction, or series of connected transactions' as a previous suit, which concluded in a valid and final judgment, will be precluded." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999). In *Brown v. Felson*, 442 U.S. 127 (1979), the Supreme Court determined that res judicata (claim preclusion) does not apply when "considering the dischargeability of debt." *Id.* at 442 U.S. at 138.

In *Brown v. Felson*, the Supreme Court stressed "that the bankruptcy court has exclusive jurisdiction to determine the nature of a debt for dischargeability purposes, and concluded that applying res judicata [claim preclusion] to the dischargeability decision would undercut that jurisdiction." *In re Crespin*, 551 B.R. at 896–97. Claim preclusion principles therefore cannot prevent a bankruptcy court from determining the dischargeability of debts. Thus, Judge Huling's judgment is res judicata on the amount Defendant owes Plaintiff, but not on whether the debt is nondischargeable under § 523(a)(6).

   2.  Issue Preclusion. Issue preclusion bars "successive litigation of [1] *an issue of fact or law* [2] *actually litigated and resolved* in a valid court determination [3] *essential* to the prior

---

[5] Res judicata encompasses both claim preclusion and issue preclusion. *See In re Crespin*, 551 B.R. 886, 895 (Bankr. D.N.M. 2016), citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

judgment, even if the issue recurs in the context of a different claim." *In re Zwanziger*, 741 F.3d 74, 77 (10th Cir. 2014) (citing *Taylor v. Sturgell*, 553 U.S. at 892) (emphasis in original). If the party invoking the doctrine establishes a prima facie case, then the burden shifts to the party opposing collateral estoppel to show that he was not afforded a fair opportunity to litigate the issue in the prior proceeding. *Simon v. Taylor,* 2103 WL 5934420 at *25 (D.N.M.), citing *Padilla v. Intel Corp.*, 125 N.M. 698, 701 (Ct. App. 1998), and *State v. Bishop*, 113 N.M. 732, 734 (Ct. App. 1992). Res judicata is an affirmative defense; the party raising it bears the burden of proof. *Simon v. Taylor*, 2103 WL 5934420 at *26.

Here, Defendant did not plead res judicata as an affirmative defense. Defendant did, however, file a motion for summary judgment, arguing that Judge Huling's finding regarding Defendant's state of mind precluded a § 523(a)(6) judgment. Although the Court denied the motion, issue preclusion was raised by the Defendant and will be addressed.

The Judge Huling's key findings are:

Although the actions of Mr. Rylant resulting in breach of the contract were intentional, there is insufficient evidence that he did not believe he was justified in temporarily delaying payment due to the condition of the assets and the unexpected expenses.

The Plaintiff is not entitled to punitive damages, as the Plaintiff has failed to prove a culpable mental state on the part of Mr. Rylant or Loop.

Although intent has been proven on the part of Mr. Rylant, the requisite culpable mental state has not been proven to support a punitive damages award against any party, and therefore, no punitive damages are awarded.

The Court concludes that entry of a nondischargeability judgment against Defendant personally under § 523(a)(6) on the $30,000 debt is not precluded by Judge Huling's findings or conclusions. First, Judge Huling's ruling about Defendant's state of mind relates to Loop's default under the note and purchase agreement, not to Defendant's failure to repay the $30,000 personal

loan. Judge Huling never addressed why Defendant did not pay back the $30,000. As best the Court can tell, Plaintiff did not ask for punitive damages for this failure to pay, only for Loop's failure to pay for the restaurant assets.[6]

Second, the standards for assessing punitive damages for intentional breach of contract in New Mexico are unclear and are difficult to compare to the willful and malicious standards under § 523(a)(6). In *Bogle v. Summit Investment Co., LLC*, 137 N.M. 80 (Ct. App. 2005), the Court of Appeals held:

> our case law clearly establishes that punitive damages may be recovered for breach of contract when the defendant's conduct has been sufficiently malicious, oppressive, fraudulent, or committed recklessly with a wanton disregard for the plaintiff's rights. *Paiz v. State Farm Fire & Cas. Co.*, 118 N.M. 203, 210, 880 P.2d 300, 307 (1994). An award of punitive damages for breach of contract may be sustained on appeal only if the evidence shows a culpable state of mind. *Allsup's Convenience Stores, Inc. v. N. River Ins. Co.*, 1999–NMSC–006, ¶ 45, 127 N.M. 1, 976 P.2d 1. "Our rule on punitive damages never was intended to make punitive damages available for every intentional breach of a contract." *Romero v. Mervyn's*, 109 N.M. 249, 256, 784 P.2d 992, 999 (1989). An intentional breach by itself ordinarily cannot form the predicate for punitive damages, not even when the breach is flagrant, that is, when there is no question that the conduct breaches the contract, even if the other party will clearly be injured by the breach. *Cafeteria Operators, L.P. v. Coronado–Santa Fe Assocs., L.P.*, 1998–NMCA–005, ¶ 43, 124 N.M. 440, 952 P.2d 435 (Hartz, C.J., concurring in part and dissenting in part). Circumstances which could make punitive damages appropriate in a breach of contract case include, for example, an intentional breach accompanied by fraud. *See, e.g., Whitehead v. Allen*, 63 N.M. 63, 65–66, 313 P.2d 335, 336 (1957) (affirming a punitive damages award for the falsification of weight records by purchaser of alfalfa).
>
> Also, when the breaching party intends to inflict harm on the non-breaching party or engages in conduct which violates community standards of decency, punitive damages are appropriate. *McConnell*, 112 N.M. at 375, 815 P.2d at 1165. *See Romero v. Mervyn's*, 109 N.M. 249, 258, 784 P.2d 992, 1001 (1989) ("Overreaching, malicious, or wanton conduct" justifying punitive damages "is inconsistent with legitimate business interests, violates community standards of

---

[6] Because Defendant never gave the Court a copy of the state court pleadings, he failed to carry his burden of proving that Judge Huling's state of mind ruling applied to the $30,000 loan as well as the restaurant asset purchase obligations. Judging from Judge Huling's findings and conclusions, and without the benefit of the pleadings, it does not appear that Judge Huling addressed Defendant's state of mind regarding his failure to repay the $30,000 loan.

decency, and tends to undermine the stability of expectations essential to contractual relationships.").

137 N.M. at 90. This rather vague standard contrasts with the well-defined willful and malicious standard in § 523(a)(6). It is difficult to apply Judge Huling's on punitive damages against Loop to the § 523(a)(6) action against Defendant.

Based on all of the trial evidence, the Court concludes that Judge Huling' findings and conclusions may preclude a § 523(a)(6) judgment against Loop (had Loop filed its own bankruptcy case, for example), but do not preclude Plaintiff from proving, as it did, that Defendant's failure to repay the $30,000 was willful and malicious.

### III. CONCLUSION

Plaintiff succeeded in the difficult task to proving that a debt for breach of contract is nondischargeable under § 523(a)(6). The state court's findings of fact do not preclude this conclusion. A separate judgment will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 7, 2018

Copies to: counsel of record